UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEONARD BROWNING,<br><br>        Plaintiff,<br><br>  vs.<br><br>PEND OREILLE COUNTY SHERIFF'S DEPARTMENT, GERALD WEEKS, individually, professionally, administratively and as Pend Oreille County Sheriff; JANET REED, individually, professionally, administratively, and as Pend Oreille County Deputy Sheriff; RYAN TRUMAN, individually, professionally, administratively, and as Pend Oreille County Deputy Sheriff; MICHAEL SARGENT, individually, professionally, administratively, and as Police Officer of City of Newport; and G.W. BARRETT, an individual, et al.,<br><br>        Defendants. | NO. CV-07-0286-JLQ<br><br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment (Ct. Rec. 21) and Defendants' Motion to Strike (Ct. Rec. 45). The motions were argued in person on August 7, 2008. Heather Yakely appeared on behalf of the Defendants and Plaintiff Leonard Browning appeared *pro se*. The following order is intended to memorialize and supplement the oral ruling of the court denying the Motion to Strike, and granting in part and denying in part the Motion for Summary Judgment.

///

ORDER - 1

## I. BACKGROUND

On September 7, 2007, pro se Plaintiff Leonard Browning filed a civil rights action in this court alleging various claims arising out of his arrest that occurred on September 7, 2005 while stopped on a rural road to cleanup diesel fuel which had spilled onto the road out of a tank which had fallen from the back of the pickup truck he was driving.  Browning names in his Complaint as Defendants: Pend Oreille County Sheriff's Department, County Sheriff Gerald Weeks, Pend Oreille County sheriff's deputies Janet Reed and Ryan Truman, as well as Kalispel tribal police officer G.W. Barrett, and City of Newport police officer Michael Sargent.

Browning's Complaint alleges unspecified violations of his constitutional rights under the First, Fourth, Fifth, Seventh, Eighth, Ninth, Eleventh, Thirteenth, and Fourteenth Amendment of the United States Constitution. Ct. Rec. 1 at 5.  Pro se plaintiffs are entitled to a liberal construction of their pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a pro se  complaint be held to "less stringent standards than formal pleadings drafted by lawyers").  In that regard, the court has examined the Complaint and briefs thoroughly and has attempted to discern all of plaintiff's legal arguments.  The court has interpreted the Complaint to allege the following claims: (1) civil rights violations under 42 U.S.C. § 1983 by Barrett for unlawful arrest; the use of excessive force and violating his right of free movement; his right to be secure in his person; his right of free speech; his right of due process; and his right to be free from cruel and unusual punishment following arrest; (2) civil rights violations by Weeks, Reed, Truman and Sargent for failure to intervene to prevent an illegal arrest and use of excessive force; and 3) and municipal liability for deliberate indifference to the constitutional rights of the public by condoning and failing to prevent and investigate illegal arrests.  As damages he asserts pain and suffering, emotional distress, and damage to his standing in the community from public reports of the incident.  Plaintiff has withdrawn any claim for defamation, but asserts injury to his reputation as part of his damages in this case.

Defendants have moved this court for summary judgment because (1) Browning has failed to support his allegations with any admissible evidence; (2) no viable claim against Weeks, Reed, Truman or Sargent exists because they did not participate in a constitutional violation and there is no evidence of reckless disregard or deliberate indifference; (3) Browning lacks sufficient evidence to support his §1983 claims including the allegations related to unlawful arrest and excessive force against Barrett; and (4) Browning can not establish any policy or act sufficient to create liability on behalf of the County.  Plaintiff opposes the motion, arguing that triable issues of fact exist.

## II. FACTS

The following facts are undisputed unless otherwise noted.

The Defendants in this case are the Pend Oreille County Sheriff's Department, the Pend Oreille Sheriff Gerald Weeks and several individually named officers.  At all relevant times, Defendants Janet Reed and Ryan Truman were Pend Oreille County Sheriff's deputies,  Defendant G.W. Barrett was a Kalispel Tribal Police officer, and Defendant Michael Sargent was a City of Newport Police officer.

On September 7, 2005, Browning was traveling south on LeClerc Road in Pend Oreille County, Washington.  In the back of his pickup truck was a tank of diesel fuel whic fell out of the bed of the pickup truck and onto the roadway, spilling fuel out of the tank.  Traveling with Browning in a separate vehicle was Barbara Drake, who returned to Browning's location when she noticed he had stopped on the road.  At approximately 1:20 p.m., G.W. Barrett was traveling south on LeClerc Road in a marked Kalispel tribal patrol unit (a Dodge Durango)(see Ct. Rec. 53 [Ex. 2](Testimony of Barrett) at 13) when he observed Browning and Drake, spreading dirt on the roadway at the intersection of Conklin Meadows Road and LeClerc Road.

Barrett turned his vehicle around with the intent of offering assistance.  Barrett, who was off-duty and out of uniform (but also wearing a fully visible badge identifying him as a tribal officer as well as a holster and pistol), exited his vehicle.  Ct. Rec. 53, Ex.

2 at 24-25, Ex 3. He asked Browning if he was a County employee (because the pickup he was driving had a yellow light on its top). Browning responded, "Fuck no." Barrett had noticed evidence that the container had been drug from the road to the side of the road. He contacted Pend Oreille County dispatch using his cell phone informing them of his location and to run a vehicle registration on the pickup. Barrett then requested Browning's driver's license. Browning's response is disputed, though it is undisputed that it was an aggressive explicative. Browning claims he said "Fuck you." Ct. Rec. 39 [Pltf's SOF] at 17, ¶ 9. Barrett alleges he said "go fuck yourself, you're just an Indian cop. I don't recognize your authority." Ct. Rec. 23 [Defs.' SOF] at ¶ 18. Barrett requested law enforcement backup.

As Browning began to walk away from him, Barrett placed his left hand on Browning's right shoulder. Browning spun around or pulled away from Barrett's grasp. The exchange which followed is in dispute. Barrett's version of the story is that he had again requested identification, when Browning spun around and struck Barrett's left forearm with his right elbow and said "keep your fucking hands off me." He alleges he again requested identification and Browning said "go fuck yourself" and began to walk away. Browning denies making these statements or striking Barrett.

It is undisputed Barrett then grabbed ahold of Browning's suspenders. Browning admits pulling away again from Barrett's grasp, but Barrett's version is that he instructed Browning to walk toward his patrol vehicle, but Browning refused and turned, striking Barrett in the arm. Barrett claims he then took control of Browning using a "level 1 wristhold," walked him over to the vehicle, and informed Browning he was under arrest. Browning questioned Barrett what he was under arrest for. It is undisputed Barrett informed Browning that it was for assault and refusing to give information. It is undisputed Browning denied the assault and argued to Barrett that he hadn't seen him driving (and so he didn't have to produce his driver's license). Barrett claims he also informed Browning his arrest was for failure to cooperate with law enforcement. It is undisputed Browning broke free of Barrett's hold again, but Barrett also alleges that

ORDER - 4

when he did Browning struck him again on the left hand, which Browning denies. Barrett regained control of Browning, pushed him on the hood of the patrol vehicle and eventually placed him in handcuffs.

Browning's version is that Barrett struck him in the back as he was being grabbed by the suspenders and then after Browning again pulled away from his grasp:

> ...Barrett went ballistic, completely out of control and began screaming in a high pitched voice, 'You are under arrest, you are under arrest' and ran in front of Browning who at this time was near the front of Barrett's vehicle. Barrett produced a can of pepper spray, stuck it in Plaintiff's face, and started yelling, 'Put your hood on the hands.' Plaintiff said, 'What do you mean - 'Put your Hood on the hands'? Barrett then said, 'Put your hands on the hood.' Plaintiff then complied...Barrett then applied the handcuffs, and began violently jerking the handcuffs upward, spinning Plaintiff around and slamming him into the patrol vehicle repeatedly while screaming, 'Get in the car, get in the car.' The Plaintiff stated, 'I can't get in the car because I am handcuffed and the door doesn't open.' Barrett then opened the car door, and began slamming Plaintiff against the door jam, kneeing him in the back and jerking the handcuffs up, severely wrenching Plaintiff's left shoulder. Plaintiff said, 'I can't get in the car. The seat is full of boxes and I have a bad back.' Plaintiff told Barrett, 'Quit assaulting me. You are hurting me, you stupid bastard.' Barrett yelled at Browning as he was jerking, kneeing, and slamming him against the car, 'Nobody talks to me like that!' Out of fear for his life, Plaintiff said, 'Why don't you calm down and wait for backup, Bobbie went to get help.'...Barrett then informed Plaintiff that he was a Pend Oreille County deputy. Plaintiff stated, 'No you're not. You're an Indian cop. You have no authority or jurisdiction in Pend Oreille County.' Barrett said I am cross-deputized.' Plaintiff said, 'No you're not.'

Ct. Rec. 39 [Pltf's SOF] at 21, ¶16.

Barrett specifically denies having either showed or used pepper spray. Barrett also denies stating he was a Pend Oreille County deputy. Barrett rather claims that he informed Browning he was a tribal police officer who was commissioned for the County. Ct. Rec. 49 [Defs' Reply SOF] at 8.

It is undisputed that after being handcuffed with his arms behind his back, Browning yelled and screamed at Barrett. Browning yelled at Barrett that he was in pain, the handcuffs were too tight, and that he had a shoulder operation and back injury. Browning told Drake to go get help and Drake drove away from the scene. Browning admits he "called Barrett everything he could think of," asked him the reason for his arrest, and was screaming at him to quit assaulting him. Barrett refused to loosen the handcuffs without backup.

Shortly thereafter, Sheriff Weeks, Deputy Reed, Deputy Truman and Officer

ORDER - 5

Sargent arrived on the scene, and Drake returned.  Sargent engaged Ms. Drake away from Browning at the scene.  After Browning complained to Truman that the handcuffs were hurting him, Truman re-handcuffed Browning with his hands in front of him.

Browning claims that while at the scene of the arrest Reed, Sargent, and Truman all heard him claim that Barrett had assaulted him, put the handcuffs on too tight, jerked him around, kneed him in the back and kicked him.  Browning alleges Reed "took control of my personal belongings in my pocket as Sargent looked on." Affidavit of Browning, Ct. Rec. 40, Ex. 3 at 7.  While Reed recalls the incident and seeing Browning at the scene, she denies seeing the handcuffs or any evidence of any use of force against Browning.  Truman admits having seen the handcuffs, but did not notice any indication they had been placed on too tightly.  There were no cuts.  Sargent states he was there only for officer safety reasons, that he had no contact with Browning and spoke only with Drake.

Browning was arrested and cited by Barrett for six offenses including felony assault, resisting arrest, refusing to give information or to cooperate with an officer, failure to secure load, failure to obtain Washington driver's license after 30 days of residence, and failure to register vehicle within 30 days of residence.  Less than ten minutes after arriving on scene, Truman transported Browning to jail. After an appearance before a judge, Browning was released on September 8, 2005 on his own recognizance.

All offenses cited (and his subsequent charge for assault) were apparently eventually dismissed except the traffic citation for failure to secure load.

By reason of the Defendant's objection, although not challenging its accuracy, concerning lack of technical certification, Plaintiff has expended the time and expense of obtaining and submitting certified copies of the transcript of a January 19, 2006 hearing before Pend Oreille County Superior Court Judge Allen C. Nielsen on his motion to dismiss the third degree assault charge in the underlying state criminal case.  See Ct. Rec. 53, Ex. 2. Also of record is a certified copy of Judge Nielsen's order of February 9,

2006 dismissing the assault charge after finding Barrett did not have the authority in Pend Oreille County to conduct the initial investigation of the civil infraction (improperly secured load), and thus because the initial contact and detention was illegal, Browning's subsequent failure to obey was suppressed.  See Ct. Rec. 53, Ex. 3.

On the date of the incident, Barrett held a "Special Deputy Certification" issued by the Pend Oreille County Sheriff.  Pursuant to this "special commission" or "cross-commission", Barrett believed he had authority to enforce laws in Pend Oreille County and believed at the time he approached Browning he was acting pursuant to this authority.  Ct. Rec. 24, Ex. E [Affidavit of G.W. Barrett] at 3; Ct. Rec. 53 [Testimony of G.W. Barrett], Ex. 2 at 13.   When questioned at the state court hearing by Browning what "cross commissioned" meant, Barrett responded, "It means the sheriff has given me the authority to act as a deputy in Pend Oreille County."  Ct. Rec. 53, Ex. 2 at 32-33. When asked twice whether this meant at *any time* he was within the boundaries of Pend Oreille County, Barrett responded affirmatively, "Yes sir."  Ct. Rec. 53, Ex. 2 at 32-33.

The state court hearing was a contested hearing and Browning represented himself.  Browning argued that Barrett's authority to act was controlled by the "Mutual Law Enforcement and Protection Agreement" (a copy of which was delivered to this court at the undersigned's request following the summary judgment hearing) entered into by the County and the Kalispel Tribe which states:

> "Any duly authorized law enforcement officer of either the Tribe or the County who:
>
> a. Observes the commission of a misdemeanor, including traffic infractions and crimes, and pursues the offender...shall be authorized to continue that pursuit across the boundary of the Kalispel Indian Reservation until the offender is apprehended..."

Ct. Rec. 55.  Browning argued in state court that because he had not been pursued across the reservation boundary, Barrett had no authority to act and thus the assault charge against him should be dismissed.  The state attempted to persuade the court that the local agreement was not the sole grant of authority to tribal police, and that Barrett had authority to act pursuant to the consent of the Sheriff given when Barrett was granted the

ORDER - 7

special deputy certification; and secondly, that Barrett had authority as he was in "fresh pursuit" of Browning because he reasonably believed he had committed a traffic infraction.

The state court agreed with Browning and found that Barrett did not have authority under either the local agreement or by statute to conduct the investigation into the traffic infraction (improperly secured load) outside the tribal boundary.  The judge also found that Barrett had "acted in good faith" and "in full belief that he had such authority" (Ct. Rec. 53, Ex. 2 at 63) and had "probable cause to believe a civil traffic infraction had been committed" Ct. Rec. 53, Ex. 3 at 73.

None of the officers who were at the scene, except Barrett, prepared written reports.   The other officers were dispatched to the scene as back up and none of the officers arrived until after Browning was handcuffed.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *see California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact

could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *See Nissan Fire & Marine*, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## IV. DISCUSSION

### A.    Defendants' Motion to Strike

In this case, Defendants have moved to strike every exhibit attached to Browning's responsive affidavit based upon objections for failure to properly authenticate the documents (some of which were court records and apparently initially produced by Defendants in discovery), relevancy, hearsay, and inadmissible opinion testimony.  In response to the motion, Browning went to the extra effort to obtain certified copies of some of the exhibits in advance of the summary judgment hearing.

Defense counsel's filing of technical and routine motions to strike in summary judgment motion practice is bothersome, especially in a case such as this involving a pro se litigant.  *See also* filings by counsel for the Defendants in *Shulgan v. Noetzel, et al.*, EDWA Case # 07-CV-51-JLQ, Ct. Rec. 41.  Pro se litigants are generally afforded some leniency in their compliance with the technical rules of civil procedure.  *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir.1986).   Defense counsel should know that motions to strike are generally disfavored, should only be used sparingly, and summary judgment will not be granted against a pro se plaintiff on the basis of procedural technicalities. Indeed, striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice. Defense counsel ought also to know that though Rule 56(e) requires parties in opposing summary judgment to submit facts as *would be* admissible in evidence, in summary judgment practice, it is not unusual for unauthenticated documents to be submitted (even in cases where all litigants are represented by counsel), especially

where the side offering them has no reason to expect a dispute over authenticity.  Indeed, Defendants have not dispute d their authenticity or accuracy.

The court will not strike any of Plaintiff's submission and has carefully considered each document.  The court is free to and in ruling on any summary judgment motion will always disregard those facts that are irrelevant, without adequate foundation, or concerning ultimate questions before the court.

**B.    42 U.S.C. § 1983**

Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. 42 U. S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To succeed on a §1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him or her of a constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A public official may be immune from liability for acts performed in his official capacity under either the doctrine of absolute immunity or qualified immunity. *Mabe*, 237 F.3d at 1106. Generally, the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 409, 433 n. 4 (1993).

In determining whether Defendants are entitled to qualified immunity, the Court must first determine whether Plaintiffs have stated a prima facie claim that Defendants violated one of their constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 198, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*  If the Court determines that Plaintiff presented a prima facie case, it must ascertain "whether that right was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brittain*, 451 F.3d at 988 (quoting

*Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005). "This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case." *Id.* (*quoting San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005)).

**1. Civil Rights Claims against Defendants Weeks, Truman, Sargent, Reed**

Browning's claims against Defendants Weeks, Truman, Sargent and Reed are that they did not intercede to prevent the alleged violations of his constitutional rights.   For example, Browning has explained his only complaint against Truman is that he "...failed to report physical injury of a prisoner to his boss, and his boss was standing less than twenty feet away."  The extent of the personal knowledge or involvement of these officers in his arrest as alleged by Browning, is that Browning informed Reed and Truman (and Sargent was within earshot) that the handcuffs were too tight and that he had been assaulted by Barrett; that Reed took possession of Browning' personal belongings; that Truman adjusted his handcuffs and transported him to jail; that Sargent spoke with a witness; and that Weeks spoke with Barrett. Ct. Rec. 38.

None of the conduct alleged against these individual defendants reveals any degree of culpability sufficient to rise to the level of a constitutional violation.  The law is clearly established that an officer has a duty to intervene to prevent an unlawful arrest or the use of excessive force if the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994).  Still, to recover on that ground, of course, a plaintiff must overcome the hurdle of qualified immunity.  A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's "clearly established statutory or constitutional rights" of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those

rights.  *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987).

It is undisputed that these officers did not arrive on the scene until after Barrett had requested backup and Browning had been handcuffed.  The officers did not witness any of the alleged excessive force and did not have a realistic opportunity to prevent any such harm from occurring.   Moreover, there is very little evidence, if any, as to the extent of these officers knowledge upon arriving on scene.  Even assuming the truth of Browning's version of events and that these officers were informed at the scene that Barrett had placed the handcuffs too tightly and had assaulted Browning during the arrest, the backup officers at the scene are not required to conduct an investigation to explore and eliminate every theoretically plausible claim of innocence or unlawful arrest.  *Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979) (arresting officers not required to investigate claim of mistaken identity or lack of requisite intent).

Moreover, the record contains no evidence, other than allegations, that the officers knew or should have known at the time of his arrest that Barrett was outside his jurisdiction and had no authority to make the arrest.   Each officer indicates in their affidavit that they responded to a call for "officer assistance."  There are no facts of record which suggest any of the back up officers had knowledge of the full circumstances of the incident prior to or upon their arrival.  Even assuming the officers were aware (which there is no evidence of) or should have been aware of the limits of Barrett's authority in Pend Oreille County, there is no evidence suggesting the officers possessed sufficient knowledge of the circumstances of the arrest at the time to discern whether Barrett was lawfully exercising  that authority which he did have in the County.

Given the record's undisputed evidence, including the transcript of the contested state court hearing and the judge's order regarding the bounds of officer Barrett's jurisdiction, Defendants have demonstrated that a competent police officer could have believed it was objectively reasonable for Barrett to arrest Browning.  Browning has not

come forward with evidence from which a jury could form a basis to conclude that the conduct of these non-intervening officers was objectively unreasonable.

**2. Civil Rights Claims against Barrett**

a. Unlawful Arrest

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amend. IV. The mere fact that Barrett was acting outside his primary territorial jurisdiction does not equate to a violation of the Fourth Amendment on his part. *See e.g., United States v. Mikulski*, 317 F.3d 1228 (10th Cir. 2003)(warrantless arrest outside an officer's jurisdiction (but within the same state) did not rise to a constitutional violation even though it may have violated state law in part because the officers were acting between political subdivisions of the same state); *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995)("[W]e do not think Fourth Amendment analysis requires reference to an arrest's legality under state law."); *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994)(holding that, as a matter of law, an arrest in violation of state law does not necessarily constitute a violation of the Fourth Amendment). The issue is whether the officer's conduct violated *federal law* or the *constitution*, not state law or some local agreement, though certainly noncompliance with local or state law may be relevant in determining whether the police's conduct was *reasonable* for Fourth Amendment purposes.  The Supreme Court recently held that a police officer who makes an arrest that is based on probable cause but who is prohibited by state law from doing so does not violate the Fourth Amendment.  *Virginia v. Moore*, ---U.S. ----, ----, 128 S.Ct. 1598, 1607, 170 L.Ed.2d 559 (2008).   In concluding its discussion of the officers' authority to make the arrest, the Court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Moore*, 128 S.Ct. at 1607.

Interestingly, Defendants did not address the claim for unlawful arrest in their

briefing until filing their Reply memorandum, which notes that Officer Barrett was unavailable to provide a responsive affidavit.  Ct. Rec. 50 at 12 n. 3.  However, based upon the evidence from the state court proceedings submitted by Browning at the request of this court, the court can conclude that Barrett lacked actual authority under state and local law to conduct the investigation of the civil infraction of failure to secure a load. However, the record also supports the reasonable conclusion that Barrett was acting in a good-faith belief that he had lawful authority at the time he made the arrest.  Ct. Rec 53, Ex. 3.  Indeed, after the state court evidentiary hearing the judge found that Barrett had "acted in good faith" and "in full belief that he had such authority" (Ct. Rec. 53, Ex. 2 at 63) and had "probable cause to believe a civil traffic infraction had been committed" Ct. Rec. 53, Ex. 3 at 73.

Plaintiff's admitted facts also demonstrate that Barrett had probable cause to arrest Browning for the offenses of refusing to cooperate with an officer and resisting arrest, offenses which were committed in his presence.  Probable cause is established if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probably that [the suspect] had committed a crime." *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992).  It is undisputed that Browning refused to cooperate with Barrett and was immediately agitated with Barrett. From the very first contact and questioning made by Barrett, Browning admittedly engaged in aggressive and what could be construed as threatening behavior toward the officer by making statements like "fuck you," refusing to present identification, and walking away from the officer toward a vehicle.  Browning's profane utterances to the officer could have reasonably been interpreted as constituting a refusal to desist, which was well beyond First Amendment protection.  While Barrett was speaking to him, Browning began to walk away from Barrett and then he physically pulled away from Barrett's grasp twice.

Under the totality of the circumstances, Browning has failed to raise a material question of fact as to Barrett's probable cause to arrest, and he has therefore failed to

ORDER - 14

establish an unlawful arrest *under the Fourth Amendment*.  Moreover, assuming

arguendo that Browning could show that Barrett violated his Fourth Amendment right to

be free from unlawful arrest, Browning has failed to establish that Barrett's decision to

arrest was so obviously unlawful that a reasonable police officer would have known he

was violating Plaintiff's rights.  Officer Barrett is entitled to qualified immunity on

Browning's unlawful arrest claim.

### b. Excessive force

Plaintiff further claims that Barrett used excessive force in effectuating his arrest

in violation of the Fourth Amendment.  The Ninth Circuit has held that a § 1983 claim

may be based upon the Fourth Amendment if the police used excessive force during an

arrest. *Robins v. Harum*, 773 F.2d 1004 (9th Cir. 1985).  Police officers may only use

force that is objectively reasonable under the circumstances. *Graham v. Connor*, 490

U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the Ninth Circuit, courts evaluate

claims of excessive force under the Fourth Amendment's objective reasonableness

standard. *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996). "[T]he

reasonableness inquiry in an excessive force case is an objective one: the question is

whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation."

*Graham*, 490 U.S. at 397, 109 S.Ct. 1865. Trial courts must balance "the nature and

quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests at stake." *Id*. at 396, 109 S.Ct. 1865 (internal

citations omitted). Assessing the "nature and quality" of a given "intrusion" requires the

fact finder to evaluate the "type and amount of force inflicted." *Chew v. Gates*, 27 F.3d

1432, 1440 (9th Cir. 1994). The governmental interest is measured by considering: (1)

the severity of the crime at issue; (2) whether the suspect posed an immediate threat to

the safety of the officers or others; (3) whether s/he was actively resisting arrest, and any

other exigent circumstances present at the time. *Deorle v. Rutherford*, 272 F.3d 1272,

1280 (9th Cir. 2001). Because this balancing "nearly always requires a jury to sift

through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit] has held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

Defendants argue that they are entitled to qualified immunity on Browning's claim of excessive force. The court must first determine, whether viewed in the light most favorable to Browning, the facts alleged show the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Where the facts are disputed, their resolution and determinations of credibility "are manifestly the province of the jury." *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002).

It is clearly established that "[t]he use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir.1986). Here, Plaintiff contends that Barrett shoved him in the back while being grabbed by the suspenders and then "went ballistic" threatening him with pepper spray and screaming at him.  Browning claims he forcibly handcuffed him and slammed him onto the patrol vehicle.  Once handcuffed he alleges he jerked the handcuffs upward, slammed Browning against the car, and kneed him again in the back.  Browning claims he did nothing to struggle once arrested. If Browning's version of the facts is believed, Barrett used excessive force during and after his arrest. Thus, viewing the record in the light most favorable to Browning, he could establish a violation of the Fourth Amendment for excessive force.

Under the qualified immunity analysis, "[i]f a [Constitutional] violation could be made out on a favorable view of the party's submissions, the next sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force' " *Id*. at 206, 121 S.Ct. 2151. "Because the focus is on whether the officer had fair notice that [the officer's] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." If

the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)("Of course, in an obvious case, the [ ] standards enunciated in *Graham v. Connor* (citations omitted) can 'clearly establish' the answer, even without a body of relevant case law"); *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)(noting in a case where the Eighth Amendment violation was "obvious" there need not be a materially similar case for the right to be clearly established). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. The Fourth Amendment prohibits a wide range of governmental intrusions on the person. "The Fourth Amendment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot." *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir .2001). It is well established that overly tight handcuffs can constitute excessive force. *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir.2000). Even "[t]he use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances." *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 1472, 161 L.Ed.2d 299 (2005)(concurring opinion of Justice Kennedy citing Graham v. Connor ). "[W]here there is no need for force, any force used is constitutionally unreasonable." *Headwaters Forest Def. v. County of Humboldt*, 211 F.3d 1121, 1133 (9th Cir. 2000).

It is undisputed that once handcuffed Browning yelled at Barrett that he was in pain, screamed at him to quit assaulting him, and called him "everything he could think of."  Barrett admits he knew Browning felt the handcuffs were too tight, but he did not want to release the cuffs until backup arrived.  Barrett has not responded to the allegations of kneeing him and slamming him into the car, once handcuffed.  Barrett's affidavit states he used "a very limited amount of force despite Mr. Browning's

ORDER - 17

assaultive behavior" and it was only the force necessary to get Browning handcuffed "without any further incident."  Ct. Rec. 34 at 48-49.

The Ninth Circuit has repeatedly stated that whether the force used to arrest an individual is reasonable is "ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir.1997)(*citing Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994)). Viewing the record in the light most favorable to Browning on his excessive force claim, the court finds that he has established the existence of disputed material issues of fact which may only be resolved by a jury. Because Browning and Barrett offer varying accounts of the events surrounding the arrest-namely whether Browning struck Barrett during his arrest and whether Barrett kneed him, slammed him into the car, unreasonably placed the handcuffs excessively tight, and jerked his arms upward-the Court finds that summary judgment as a matter of law is inappropriate. Such conduct, if true, against a handcuffed, secured, alleged cooperative arrestee, would preclude Barrett from qualified immunity.

How these facts are resolved by the jury will determine whether Barrett's actions constituted excessive force in violation of the Fourth Amendment and whether Barrett is entitled to qualified immunity as a matter of law. S*ee, Littrell v. Franklin*, 388 F.3d 578 (8th Cir.2004)(district court improperly submitted the legal question of qualified immunity to the jury); *accord Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir.1988) (rejecting a jury instruction that told jurors the defendants would be immune from suit if their actions did not violate clearly established law, reasoning "[h]ow was the jury supposed to determine the law on the dates in question? And, if the jury somehow could determine the law on the dates in question, how was it supposed to determine if that law was 'clearly established'?").

c. Plaintiffs' Remaining Constitutional Claims

Browning also asserts the violation of his right of free movement, right to free speech, right to due process, and right to be free from cruel and unusual punishment following arrest.   These claims have no legal, factual, or evidentiary basis in this case.

Restriction of Browning's right of free movement or free speech are not implicated by the facts. No cause of action under the Eight Amendment exists for arrestees. *See Graham v. Connor*, 490 U.S. 386, 395 & n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Finally, the United States Supreme Court has determined that § 1983 excessive force claims are addressed under the Fourth Amendment, not the Fourteenth Amendment's substantive due process standard. *Id.* at 395. Accordingly, these claims are dismissed.

### 3. Municipal Liability

There are only limited ways in which a municipality may be held liable under § 1983. A municipality may not be held responsible for the acts of its employees under a respondent superior theory of liability. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). Rather, to state a claim for municipal liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit, s*ee City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), or that the municipality ratified the unlawful conduct, *see Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir.1991) .

It appears Browning bases his claim against the County primarily on the allegation that the municipality ratified the allegedly unlawful conduct in this case. Browning alleges the County should be held liable for being deliberately indifferent to the constitutional rights of the public by condoning and failing to prevent and investigate illegal arrests. As evidence, Browning points to the officers' failure to write incident reports after the arrest and offers the statement that the fact that Sheriff Weeks and the County officers "permitted Barrett's false arrest of Browning thereby depriving him of his constitutional rights, is a clear indication that the defendants have customs in place which amount to deliberate indifference to the preservation of the citizens' civil rights; and as a matter of fact are the moving force behind the constitutional violations..." Ct. Rec. 38 at 18.   In an apparent attempt to show pattern or practice of condoning unlawful conduct, Browning also describes several other incidents and lawsuits where those

involved had alleged the conduct of the police was unlawful, including his own receipt of a citation by city of Newport for violation of a dog licensing ordinance.

Viewing the facts in the light most favorable to Browning, the County is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim because Browning does not raise a triable issue of fact as to whether the Sheriff's department had any practice or policy that deprived him of his civil rights. *See Boyd v. Benton County*, 374 F.3d 773, 784 (9th Cir. 2004). As municipal liability can not be predicated on isolated or sporadic incidents, the officers' failure to produce incident reports or failure to investigate the arrest does not evidence conduct that has become a traditional method of carrying out County policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Moreover, mere reference to a few complaints filed does not suffice to prove a policy or custom. There is no evidence of an intent to ratify the conduct of the officer Barrett. There is no evidence to establish that the use of excessive force or unlawful arrests was a formal policy or widespread practice of the Pend Oreille Sheriff's Department or that previous constitutional violations had occurred for which the offending officers were not discharged or reprimanded. Accordingly, the court grants the Defendants' motion as to Browning's claims against the County.

## V. CONCLUSION

Accordingly, for the reasons set forth above, Defendants' Motion to Strike (Ct. Rec. 45) is **DENIED** and Defendants' Motion for Summary Judgment (Ct. Rec. 21) is **GRANTED IN PART** and **DENIED IN PART**. All of Browning's claims against the Defendants are dismissed, *except* the claim under 42 U.S.C. § 1983 against Officer Barrett for excessive force, which will remain for trial.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel and the Plaintiff.

**DATED** this  13th day of August, 2008.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 20